UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRYANT WING,<br><br>        Plaintiff<br><br>v.<br><br>NANCY A. BERRYHILL,<br>*Acting Commissioner of Social Security*,<br><br>        Defendant | No. 2:16-cv-00543-JDL |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found that the plaintiff had no severe impairment from August 1, 1983, his alleged onset date of disability, through December 31, 1990, his date last insured for SSD benefits. The plaintiff seeks remand on the basis that the ALJ gave undue weight to the opinions of three non-treating, nonexamining medical experts and wrongly rejected the opinion of his treating physician. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 15) at 3-12. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found,

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 14, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 1990, Finding 1, Record at 14; that, through his date last insured, he had a medically determinable impairment of postpolio syndrome/poliomyelitis affecting his left lower extremity, Finding 3, *id*.; that, through his date last insured, he did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months and, therefore, did not have a severe medically determinable impairment or combination of impairments, Finding 4, *id*.; and that he, therefore, had not been disabled at any time from August 1, 1983, his alleged onset date of disability, through December 31, 1990, his date last insured, Finding 5, *id*. at 21. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal

effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff challenges the ALJ's finding that he had no severe postpolio impairment as of his date last insured, asserting that:

1. The ALJ erroneously gave great weight to the opinions of three agency nonexamining consultants, Richard T. Chamberlin, M.D., Leslie Abramson, M.D., and Peter B. Webber, M.D., that there was insufficient evidence to establish *disability* during the period from August 1, 1983, to December 31, 1990, when the burden of establishing the *severity* of an impairment is *de minimis*. *See* Statement of Errors at 3-5.

2. Dr. Webber's written answers to interrogatories dated September 29, 2014, and testimony at the plaintiff's February 24, 2015, hearing were rendered invalid by his reliance on the false premise that the plaintiff had a congenital leg deformity rather than polio/postpolio syndrome. *See id*. at 5-6; Record at 65-66, 585-90. Dr. Webber did not see photographic evidence that the ALJ wrongly refused to admit and was not informed that the plaintiff's treating physician, Nathan Raby, D.O., later clarified that his characterization of the plaintiff's leg condition as "congenital" was incorrect. *See* Statement of Errors at 6-7. Compounding these errors, the ALJ failed to call Dr. Webber to testify at a supplemental hearing held on June 24, 2015. *See id*. at 7-8.[2]

---

[2] The plaintiff mistakenly describes the June 24, 2015, supplemental hearing as having occurred on February 24, 2015. *See* Statement of Errors at 7; Record at 29-30. The plaintiff testified at three hearings before two different ALJs. On September 19, 2014, he appeared and testified before an ALJ who continued the hearing for further development of the record, including the posing of written interrogatories to a medical expert. *See* Record at 89-90, 120-23. The case was reassigned to a second ALJ, who sent written interrogatories to Dr. Webber. *See id*. at 11, 585-87. On February 24, 2015, the second ALJ held a follow-up hearing at which both Dr. Webber and the plaintiff testified. *See id*. at 59-60. The second ALJ convened a third hearing on June 24, 2015, at which Dr. Webber was not present, but the plaintiff testified. *See id*. at 29-30. The ALJ explained that he had convened that hearing because he had been persuaded by the plaintiff's counsel's post-hearing memorandum that he had erred in barring the plaintiff from testifying at his second hearing regarding his symptoms prior to his date last insured. *See id*. at 31.

3

3. Drs. Chamberlin and Abramson also were unaware that Dr. Raby had clarified the origin of the plaintiff's left leg-length discrepancy as polio, rather than a congenital condition, that Dr. Raby had assessed significant functional limitations resulting from the plaintiff's polio/postpolio syndrome prior to his date last insured, and that there was photographic proof that the deformity was not congenital and existed prior to the plaintiff's date last insured. *See id*. at 10-11.

4. The ALJ wrongly gave little weight to Dr. Raby's retrospective opinion that the plaintiff had serious functional limitations prior to his date last insured, several of which Dr. Raby attributed in whole or part to the plaintiff's postpolio syndrome impairment. *See id*. at 4, 8-10, 12.

These points of error, as well as others raised by the plaintiff's counsel for the first time at oral argument, fall short of warranting remand for the reasons that follow.

*First*, the plaintiff is correct that, in determining that he had no severe postpolio impairment as of his date last insured, the ALJ relied in part on the opinions of Drs. Webber, Chamberlin, and Abramson that he had failed to demonstrate that he was *disabled* as of that date. *See* Record at 15, 17, 19-20, 130-31, 134, 152-53, 585-90. None of those consultants expressed an opinion as to whether the plaintiff had established the existence of a *severe* postpolio impairment as of then. *See id*. at 130-31, 134, 152-53, 585-90. However, the plaintiff fails to demonstrate that a finding that the impairment was severe would have made any difference. *See Ward v. Commissioner of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) ("[A] remand is not essential if it will amount to no more than an empty exercise."); *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

The ALJ relied not only on the Webber, Chamberlin, and Abramson opinions but also on his analysis of other evidence of record shedding light on the plaintiff's functional ability during the period at issue, including statements by individuals who knew him at that time. *See* Record at 16-21.

As noted above, the plaintiff challenges the ALJ's weighing of the expert opinion evidence; however, he does not succeed for the reasons discussed below. He articulates no challenge to the ALJ's reliance on other record evidence tending to show that he was not disabled as of the relevant period. *See* Statement of Errors at 3-12. That latter category of evidence bolsters and is consistent with the expert findings on which the ALJ relied.

In accordance with Social Security Ruling 03-01p ("SSR 03-01p"), bearing on postpolio sequelae, the ALJ considered not only statements made by the plaintiff to treating providers but also the statements of his friends J.C.F. and J.P., son J.M.W., ex-wife K.B., and ex-girlfriend T.S. *See* Record at 16-18, 384-89; SSR 03-01p, reprinted in *West's Social Security Reporting Service Rulings 1983-1991* (Supp. 2016), at 276 ("Evidence from employers and other third party sources may be valuable in documenting a loss of a previous level of functioning and should be sought when there is a discrepancy or a question of credibility in the evidence of record and a fully favorable determination or decision cannot be made based on the available evidence."). He found:

> [T]he various third-party witness statements in evidence do not support a finding of disability during the relevant period. For example, the statements [of] [J.C.F., J. M.W., and K.B.] support the [plaintiff's] testimony regarding his diagnosis of polio and its physical effects on his body. However, [J.C.F.'s and K.B.'s] statements do not establish a level of disability during the relevant period. In fact, [J.C.F.] based his statement on his observations of the [plaintiff], during his early teens, while he and the [plaintiff] were swimming in a pond.
>
> Moreover, statements from [J.M.W.] noted a level of activity that is generally inconsistent with a finding of disability. For example, he indicated that the [plaintiff], albeit with his assistance, was capable of harvesting firewood, putting a road in, and building a house. The undersigned notes that this level of activity is

5

generally consistent with his more recent activity such as falling off a cliff with his snowmobile, rototilling his garden, riding his motorcycle for three-hundred miles, and plowing a significant amount of snow with his tractor.

Finally, [T.S.], the [plaintiff's] girlfriend during the period from 1986[] th[r]ough 1996, indicated, "(h)e was unable to participate in most outdoor activity." [T.S.] also noted that it "was nearly impossible for him to walk on" rough or rocky terrain and he "would walk up hills backwards" due to the severe pain he would experience "(w)alking up the hill normally." However, she also noted that he worked for two years repairing outboard motors. The record reveals that he earned substantial gainful activity from this work activity. Moreover, [J.P.], another long-time friend, noted that although the [plaintiff] had to brace himself or tape his ankle, he was very active.

Record at 17-18 (citations omitted).[3] Elsewhere in his decision, the ALJ identified additional evidence tending to support a conclusion that the plaintiff did not have disabling limitations during the relevant time period. For example, he noted that, in presenting to Dirk G. Asherman, M.D., for a surgical consultation on September 17, 2003, the plaintiff told Dr. Asherman that, although he had more recently had increasing pain and instability in his left ankle, he had "been very functional over the past few years." *Id*. at 18 (quoting *id*. at 652). The ALJ also observed that the plaintiff had earnings at the substantial gainful activity level in 1987, a "level of work activity [that] suggests that the progressive nature of his Postpolio sequelae is not as severe as alleged, particularly when considered in the context of his daily activity after his date last insured." *Id*. at 14.

The opinion and other evidence relied on by the ALJ, thus, makes clear that any error at Step 2 was harmless.

*Second*, the ALJ's reliance on the Webber opinion of nondisability was not undermined by Dr. Webber's reliance on the "false premise" that the plaintiff's leg deformity was present from

---

[3] In instances in which the ALJ used brackets, I have substituted parentheses, to make clear that I added all of the material in brackets.

birth (congenital) rather than the result of polio contracted in his early youth. Dr. Webber testified that he could not tell whether the plaintiff was appropriately diagnosed with postpolio syndrome given the absence of older records, variations in findings on examination in newer records, and a notation by Dr. Raby that the plaintiff had a "congenit[ally] smaller" left leg, which Dr. Webber noted had "nothing to do with polio." *Id*. at 65-66. Yet, Dr. Webber went on to question the importance of the distinction, testifying:

> I don't think [Dr. Raby] made that up, but is it of importance?
>
> And I don't know if it's important, because [the plaintiff] could have had abnormal reflexes, because of a congenital leg small extremity, depending on the injuries of that – the congenital abnormality caused but nevertheless as time progressed again we saw varying degrees of reflex results on testing.
>
> And when you have a post polio, that usually implies you have a permanent, unchanging degree of reflex abnormality. Now, that isn't always true, but it – all I'm saying is I was left in never never land, and I had real trouble trying to ascertain the duration of the stuff, because he had intercurrent injuries and accidents, and he was doing things that to me was – up on a metal roof, had an injury on the top of a metal roof. And if I wasn't able to use one leg, I don't know what I was doing up on a metal roof. Things like that.

*Id*. at 70-71.

Indeed, when Dr. Webber was directly asked to answer the question of whether the plaintiff was disabled during the relevant period in response to the earlier written interrogatories, he took into account that the plaintiff had been documented to have left lower leg atrophy and shortening that had been ascribed to polio. *See id* at 588-89. Nonetheless, he concluded:

> [T]here is insufficient medical data to indicate [that the plaintiff] was disabled from the AOD [alleged onset date] through the DLI [date last insured]. Since that time there have been only one set of C-spine films that document a degree of cervical DDD [degenerative disc disease] . . . . I must comment that his ADL's [activities of daily living] are never clarified very well and his PCP [primary care physician] notes indicate that he "cuts wood", has a hobby gardening, and it is unclear if he still rides his motorcycle (with all the alleged neck, bilateral upper extremity problems, back issues, and limited use of his Lt. [left] lower extremity, I would be concerned if he still rides it). With the paucity of confirming studies and limited

7

> PCP notes it is difficult to evaluate [the plaintiff's] capabilities. If fully credible I think that even sedentary work on a 8 hr day and/or a 5 day week long term would be difficult *during the past 3 years*.

*Id*. at 589-90 (emphasis added).[4] There is no reason to believe that, had Dr. Webber been provided with either Dr. Raby's correction of his error in referring to the plaintiff's postpolio syndrome as "congenital" or the photographic evidence showing the plaintiff's left leg both before and after he was afflicted with polio during his childhood, he would have changed his opinion as to whether the plaintiff was disabled as of the relevant time period.[5]

*Third*, the fact that Drs. Chamberlin and Abramson did not see the photographic evidence or Dr. Raby's clarification regarding the plaintiff's left-leg diagnosis is immaterial. As the commissioner points out, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 19) at 12, there is no evidence that either Dr. Chamberlin or Dr. Abramson was confused as to the origin of the plaintiff's left leg deformity. Both took into account evidence that the condition resulted from childhood polio, and neither noted any evidence that it was the result of a congenital legal deformity. *See* Record at 127, 152. In any event, regardless of the etiology of that condition, both found insufficient evidence that the plaintiff had disabling impairments as of the time period at issue. *See id*. at 131, 134, 152. The plaintiff has not shown

---

[4] In instances in which Dr. Webber used brackets, I have substituted parentheses, to make clear that I added all of the material in brackets.

[5] The ALJ declined to admit the plaintiff's photographic evidence because it was "immaterial and cumulative." Record at 12. He stated: "The [plaintiff] argued that the photographs are evidence establishing his diagnosis [of] polio in or about 1953. However, as discussed in detail below, this fact, along with a subsequent diagnosis for Postpolio syndrome[,] is already established by the medical evidence of record. Moreover, the [plaintiff], in offering these photographs depicting him before contracting polio, and then after with a deformed left leg and wearing a leg brace, is essentially asking the undersigned to interpret raw medical data." *Id*. (citations omitted). By letter dated March 18, 2015, Dr. Raby stated that his description of the plaintiff's leg in a July 19, 2012, progress note as "'congenitally smaller'" was "100% in error on my part." *Id*. at 601. He explained: "Use of the word congenital means present since birth and this is not the case for [the plaintiff]. His left leg's atrophic appearance is due to and very consistent with his having contracted polio in 1952. There is nothing 'congenital' about this leg finding. His leg atrophy and underdevelopment is an 'acquired' condition as the result of severe life threatening childhood illness." *Id*.

8

that consideration of the Raby opinion, which the ALJ properly rejected for the reasons discussed below, would have impacted Drs. Chamberlin's and Abramson's opinions.

*Fourth*, the ALJ supportably gave little weight to Dr. Raby's opinion regarding the plaintiff's limitations on or before his date last insured. *See id*. at 20, 537-40. Dr. Raby submitted a medical source statement of ability to do work-related activities (physical) dated July 25, 2013, in which he checked boxes indicating, *inter alia*, that the plaintiff was able to lift only 10 pounds occasionally, stand and/or walk for less than two hours in an eight-hour workday, sit for less than six hours in an eight-hour workday, and had additional pushing/pulling, postural, manipulative, and environmental limitations as a result of his leg, back, and COPD impairments. *See id*. at 537-40. Dr. Raby indicated that this represented his opinion as to the plaintiff's physical limitations from August 1, 1983, to the present. *See id*. at 540.

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2).

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See id.*[6] An ALJ may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016) ("SSR 96-8p"), at 150

---

[6] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant. *See* 20 C.F.R. § 404.1527(c).

9

(an ALJ can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart,* No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

The plaintiff does not argue that the retrospective Raby opinion merited controlling weight but, rather, that the ALJ failed to provide any good reason for rejecting it. *See* Statement of Errors at 8-10, 12.

The ALJ explained:

> Although Dr. Raby is the [plaintiff's] treating physician, there is nothing in the record establishing that [he] treated the [plaintiff] during the relevant period. To the extent that Dr. Raby attempts to infer disability based on the [plaintiff's] polio and subsequent Postpolio sequelae, the undersigned defers to Dr. Webber's assessment, as he reviewed the entire medical record.

Record at 20.

The plaintiff argues that these do not constitute good reasons for giving the Raby opinion little weight because (i) the fact that Dr. Raby did not treat him during the relevant period was an insufficient reason to reject his retrospective opinion, (ii) a lack of contemporaneous corroborating evidence is not fatal when, as here, a medical expert can reliably opine on the point at which a disease with a well-understood progression would have rendered a claimant disabled, and (iii) the ALJ improperly relied on the Webber opinion for the reasons separately argued. *See* Statement of Errors at 9-10, 12.

However, as the commissioner counters, *see* Opposition at 5-6, the ALJ supportably chose to defer to the opinion of Dr. Webber on the bases that Dr. Webber had reviewed the entire medical record and that his opinion was consistent with the evidence of record as a whole.[7]

At oral argument, the plaintiff's counsel expanded upon the arguments presented in the statement of errors, complaining that the ALJ (i) denied the plaintiff due process by preventing Dr. Webber not only from reviewing new evidence in the form of the Raby clarification and the photographs but also from hearing and factoring in the plaintiff's testimony, (ii) erred in finding that the plaintiff's nearly lifelong condition did not meet the 12-month durational requirement, and (iii) failed to apply Social Security Ruling 83-20 ("SSR 83-20") to infer the plaintiff's onset date of disability.

These arguments were not raised in the statement of errors and are, therefore, waived. *See Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

In any event, even if considered, they are not outcome-determinative.

To be entitled to remand on the basis of an asserted due process violation, a Social Security claimant must demonstrate not only the existence of such a violation but also resulting prejudice. *See, e.g., Chuculate v. Barnhart,* 170 Fed. Appx. 583, 587 (10th Cir. 2006) (rejecting claim of due

---

[7] As the plaintiff points out, *see* Statement of Errors at 8, Dr. Webber did not see the entirety of the evidence of record, including Dr. Raby's clarification of the plaintiff's left-leg diagnosis, the plaintiff's proffered photographic evidence, and the statements of the plaintiff's friends, son, ex-wife, and ex-girlfriend. As discussed above, (i) the Raby clarification and the photographic evidence have no bearing on Dr. Webber's opinion of nondisability, and (ii) the ALJ reasonably deemed the third-party statements consistent with a finding of nondisability.

11

process violation predicated on ALJ's denial of permission to submit post-hearing written question to vocational expert when "the ALJ's failure to forward plaintiff's unsupported question does not undermine confidence in the result in this case"); *Adams v. Massanari,* 55 Fed. Appx. 279, 286 (6th Cir. 2003) ("Clearly, in this case, the procedure used by the ALJ did not erroneously deprive Appellant of her interest in the fair determination of her eligibility for benefits, since the ALJ's decision to withhold [a post-hearing] report from the ME [medical expert] had no determinative effect on the outcome of Appellant's hearing.").

At oral argument, the plaintiff's counsel identified no concrete way in which Dr. Webber's knowledge of his client's testimony would have been outcome-determinative.

In similar fashion, the plaintiff fails to show that any Step 2 error by the ALJ in finding that he did not meet the durational requirement was prejudicial. This court has observed:

> A condition need not be "severe" or symptomatic day in and day out for twelve straight months to meet the durational requirement. Rather, as the Supreme Court recently observed in *Barnhart v. Walton*, [535 U.S. 212, 218-19 (2002)], a claimant must show both that his or her impairment has lasted (or is expected to last) for twelve months and, ultimately (for purposes of being found disabled and hence entitled to benefits), that it is severe enough to prevent him or her from engaging in substantial gainful activity for at least twelve months.

*Greene v. Barnhart*, No. 03-36-B-W, 2003 WL 22961199, at *4 (D. Me. Dec. 15, 2003) (rec. dec., *aff'd* Jan. 9, 2004). Even if the ALJ erred in finding that, through the plaintiff's date last insured, he did not have a severe impairment that lasted for 12 consecutive months, *see* Finding 4, Record at 14, he relied on opinions that stand for the proposition that the plaintiff did not meet the second durational test, that is, that he was unable to engage in substantial gainful activity for at least 12 months during the relevant period.

Finally, as the commissioner suggests, *see* Opposition at 11, even were the plaintiff's SSR 83-20 argument not waived, there is no reason to believe that application of that ruling would have

been outcome-determinative on this record. SSR 83-20 contemplates calling upon the services of a medical advisor and exploring other sources of documentation, such as information from family members and friends, to infer the onset date of a claimant's disability when, as here, there is no contemporaneous medical evidence. *See* SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 51-52. The ALJ essentially did so, obtaining Dr. Webber's answers to written interrogatories querying whether the plaintiff was disabled during the relevant period and admitting into evidence the lay statements discussed above.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of July, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge